UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRI ANN GREGORY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:19-cv-247

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that is it based on a legal error.

For the following reasons, the Court concludes that the Commissioner's decision is supported by substantial evidence and in accordance with law. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the Commissioner's decision will be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether the record contains substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must view the evidence on the record as a whole and consider any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on April 3, 2017, alleging that she had been disabled since February 2, 2017. (PageID.189.) Plaintiff was 34 years old at the time of the alleged onset date. (PageID.83.) Plaintiff had worked as a Captain in the United States Army. (PageID.194.) Plaintiff's application was denied (PageID.100–04), after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.108.)

On July 17, 2018, ALJ Laura Chess conducted a video hearing, at which Plaintiff and an impartial vocational expert testified. (PageID.53–81.) Plaintiff was represented by counsel. On October 25, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Act at any time between her alleged onset date and the date of the decision. (PageID.35–47.) The Appeals Council denied Plaintiff's request for review on January 24, 2019. (PageID.24–27.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on March 29, 2019.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 2, 2017, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative changes in the cervical spine; (2) status post excision of lesion in the right temporal lobe; (3) insomnia; (4) left brachial neuritis; (5) status post left hand injury; (6) seizure disorder; (7) post-traumatic stress disorder; (8) anxiety disorder; (9) mood

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

disorder; (10) bipolar disorder; (11) neurocognitive disorder/traumatic brain injury; (12) adjustment disorder; (13) alcohol use disorder; and (14) sedative use disorder. (PageID.37.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.38–40.) The ALJ considered Listings 1.02, 1.04, 11.02, 12.02, 12.04, 12.06, and 12.15. Regarding Listing 11.02, pertaining to epilepsy, the ALJ determined that, while there was evidence of seizure activity, the evidence did not establish that Plaintiff suffered seizures with the requisite frequency to satisfy the listing. (PageID.39.) As for the listings pertaining to mental impairments (Listings 12.02, 12.04, 12.06, and 12.15), the ALJ considered both the "paragraph B" and "paragraph C" criteria for these listings. Under paragraph B, Plaintiff was required to prove one extreme limitation or two marked limitations in the following areas:

1. Understanding, remembering, or applying information;
2. Interacting with others;
3. Concentrating, persisting, or maintaining pace;
4. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), 12.08(B), 12.15(B). The ALJ determined that Plaintiff was moderately limited in all areas of functioning. Regarding understanding, remembering, and applying information, the ALJ noted that, while cognitive testing revealed some deficits with memory and mildly impaired executive functioning, intelligence testing showed a full-scale IQ score of 104, which was in the average range. The ALJ further noted that mental status examinations consistently revealed few deficits in Plaintiff's memory. (PageID.39.) As for interacting with others, the ALJ noted that Plaintiff has a history of acting

inappropriately and not following medical advice when abusing alcohol, but when not abusing alcohol, Plaintiff's social functioning was typically within normal limits. In particular, mental status examinations showed that Plaintiff was polite and cooperative, and Plaintiff reported getting along with a variety of acquaintances, fellow soldiers, and commanders. (PageID.39–40.) Regarding concentrating, persisting or maintaining pace, the ALJ noted that, although Plaintiff suffered a traumatic brain injury and multiple concussions, mental status examinations consistently indicated that Plaintiff was able to concentrate and persist with activities within normal limits. (PageID.40.) Finally, regarding adapting or managing herself, the ALJ stated that Plaintiff testified that she was able to help care for her son daily and indicated that she was able to perform household chores. (PageID.40.) As for the paragraph C criteria, the ALJ noted that the medical evidence did not demonstrate that Plaintiff made only marginal adjustment despite mental health treatment or that Plaintiff had experienced a significant cognitive decline after her October 2015 brain surgery. (PageID.40.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except she could lift and carry 20 pounds occasionally and 10 pounds frequently; could not climb ladders, ropes or scaffolds but could climb ramps and stairs occasionally; could reach in all directions with the left upper extremity frequently; could handle with the non-dominant left upper extremity frequently; could not work at unprotected heights or in the vicinity of uncovered, unguarded moving machinery; could not operate moving machinery; could not interact with the public but could interact with coworkers occasionally; and could understand, remember, and carry out simple instructions. (PageID.40–41.)

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (PageID.45.) At step five, however, based on testimony from the vocational expert, the ALJ found that approximately 140,400 jobs existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.52–53.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). (PageID.46.)

## Discussion

Plaintiff raises two issues, both concerning the ALJ's step-three analysis. In particular, Plaintiff argues that the ALJ erred in not finding that she met the requirements for Listing 11.02 based on her epilepsy and that she did not meet the paragraph B criteria for mental impairments under Listings 12.02, 12.04, 12.06 and 12.15.

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. § 404.1520(a). An impairment that meets only some of the requirements of a listing does not qualify, regardless of its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). A claimant can provide evidence of medical equivalence to a listing by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (italics in original).

To meet Listing 11.02 (grand mal or psychomotor), a claimant must show that her seizures are "documented by detailed description of a typical seizure and characterized by:"

    A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or

    B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or

    C. Generalized tonic-clonic seizures, occurring at least once every two months for at least 4 consecutive months, despite adherence to prescribed treatment; and a marked limitation in one of the following:

        1. Physical functioning; or

        2. Understanding, remembering, or applying information; or

        3. Interacting with others; or

        4. Concentrating, persisting, or maintaining pace; or

        5. Adapting or managing oneself; or

    D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

        1. Physical functioning; or

        2. Understanding, remembering, or applying information; or

        3. Interacting with others; or

        4. Concentrating, persisting, or maintaining pace; or

        5. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02.

Plaintiff argues the ALJ erred in finding that Plaintiff did not meet the requirements for Listing 11.02 because "[t]he significant medical history shows substantial seizure activity dating back at least two years." (ECF No. 11 at PageID.2557.) As noted, the ALJ determined that Plaintiff did not meet the listing because Plaintiff's seizures did not occur with the required

frequency set forth above. Plaintiff points to no evidence in the record indicating that her seizures satisfied the frequency requirements while she was adhering to her prescribed medication. In fact, the record indicates that when Plaintiff took her anticonvulsant medication, her seizures improved significantly. (PageID.1217–18.) In contrast, Plaintiff's reports of seizures were connected to her being out of medication. (PageID.281.) Accordingly, the ALJ properly found that Plaintiff did not meet Listing 11.02.

Plaintiff next argues the ALJ erred in concluding that Plaintiff was not extremely limited in one area of functioning in the paragraph B criteria for mental impairments or markedly limited in two areas of functioning because the ALJ did not consider Plaintiff's testimony that her mother was her caregiver and did 75% of the work. (ECF No. 11 at PageID.2555–2557.) Contrary to Plaintiff's assertion, the ALJ expressly considered Plaintiff's testimony that her mother has been providing additional assistance and services to assist Plaintiff in managing her needs. (PageID.39–40.) As set forth above, the ALJ recognized that Plaintiff had some memory deficits and mildly impaired executive functioning. (PageID.39, 473–75.) However, citing mental status examinations that continually revealed few deficits in the various areas of functioning, the ALJ found that Plaintiff was only moderately limited in all the paragraph B areas. (PageID.39–40, 295, 560, 580, 689–90, 826–27.) The ALJ also cited additional evidence indicating that Plaintiff had only moderate limitations. For example, regarding understanding, remembering or applying information, she noted that Plaintiff had an average IQ score of 104. (PageID.39.) Similarly, in the area of interacting with others, Plaintiff's own account confirmed a history of getting along with others in various areas of her life. Accordingly, Plaintiff fails to demonstrate the ALJ erred

9

in concluding that Plaintiff did not meet the paragraph B requirements for purposes of the considered listings.[2]

## CONCLUSION

For the reasons stated herein, the Commissioner's decision is **affirmed**.

An Order consistent with this Opinion will enter.

Dated: June 9, 2020         /s/ Sally J. Berens
                            SALLY J. BERENS
                            U.S. Magistrate Judge

---

[2] In her reply, Plaintiff argues for the first time that the ALJ's step-five analysis, which relied on the vocational expert's testimony, was flawed because the ALJ restricted Plaintiff from working in the vicinity of uncovered or unguarded moving machinery or operating moving machinery, but the jobs the vocational expert identified would have required Plaintiff to be in the vicinity of moving machinery. Because the argument was first raised in Plaintiff's reply, it is deemed waived "because a reply brief is not the proper place to raise new arguments." *Palmer v. Comm'r of Soc. Sec.*, No. 1:17-cv-577, 2018 WL 4346819, at *7 (W.D. Mich. Aug. 9, 2018) (citing *Bormuth v. Cty. of Jackson,* 870 F.3d 494, 500 (6th Cir. 2017)), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018).